May I please report? Good morning, my name is Eric Babcock and I represent Appellant Laveris Bynes, who's with us here today. I'd like to reserve, if I may, two minutes for rebuttal, potentially. The District Court made a fatal mistake here because it found there was no deliberate direct evidence of deliberate fabrication by relying solely on the word of Detective Olmstead, who's the one who fabricated the statement at issue. There was no corroboration. Nobody, nobody else to say said exactly what happened. He reported one thing in his report that a witness named Webb said my client was still present when the alleged bomb threat was made. Was present in the center. Correct. Not a fatal mistake, nobody died. There was, there was no bomb, just a threat, correct. The audio, the recording of that, of the Webb interview, she said the opposite, that my client was gone. It wasn't until Detective Olmstead was deposed in this case that there was an explanation for this discrepancy, and he said that another officer was doing the recording and the witness made that statement after the other officer left the room, so it was not being recorded. Officers these days are all trained in recording devices. They're present, I assume, in virtually every police department these days. Officers receive training about when to turn them on, when they're allowed to turn them off, and they're well aware when they're interviewing witnesses whether or not those statements that witnesses are making are being recorded. Some witnesses refuse to be interviewed while the recordings are on, and they tell the officer they have to turn it off if they want to talk to them. In any event, there is, it's not a legal presumption, but anytime a key witness statement is not recorded, and the rest of the statements made by the witness are, that discrepancy is inherently suspicious and requires explanation, and the key statement here was not recorded, and the explanation for why it was not recorded was only given by the person who's at issue here, Detective Olmstead. The problem is the District Court had to credit that statement. It had to find Detective Olmstead's deposition testimony believable in order to find, in order to rule as it did against my client on the fabrication claim. I'm having a problem with the causation aspect of your claim. So, I mean, I understand you want to say that this is an important discrepancy because it makes it so that your client couldn't have been in the place to have made the calls at issue. The problem with that that I'm seeing is that there is other evidence that was presented at the time that a charging decision was made that placed her in the location where she could have made those calls, and so how do you, how can you satisfy causation here to show that there was an injury because of this particular discrepancy? Thank you, Your Honor, because the District Attorney who argued, who presented the evidence at the preliminary hearing and argued to the Superior Court judge that there was probable cause relied on that statement. Witness Webb's supposed statement to Detective Olmstead, the unrecorded statement. So is your position that the other evidence was not presented at that preliminary hearing? That was the, it was certainly not all presented and the key evidence... No, no, I want you to be precise here. Is your position that not, not just that the DA decided to emphasize or focus on this particular detective statement that you're concerned about, but that that's the only thing that was presented on this point about where your client was at the time that the calls were made? I'm not in a position to say it was the only thing that was presented. Okay, so then I used to be a trial judge. I've handled those kind of preliminary hearings all the time, and just because a DA decides to focus or highlight a particular piece of evidence doesn't mean that I take out from my mind all the other evidence that's there. So if there was other evidence presented that put her in that location, how can you satisfy the cause standard? Well, short of, short of deposing the judge, I don't know. I think the fact that the DA chose to argue it shows in context to the other evidence presented that the DA viewed it as the most important context, as the most, as the key evidence on the issue. That doesn't necessarily mean that the trial judge agreed, but it certainly makes it more likely, because the court, the court knows, yes, judges make their own decisions, but they are framed by the arguments of counsel, and the, the lawyers at preliminary hearings in many cases often know more about the case than the judge at that stage. So I think the court can find that there was sufficient, that the, the evidence at issue here, if it was fabricated, was a but for approximate cause of the holding order that, that led to my client being unjustly accused for two years. So you're saying that if there was some infirm evidence introduced at the preliminary hearing, that would make the rest of the evidence as to where your client was not acceptable? No, I'm not saying, I'm not saying that, and neither side briefed the rest of the evidence that was presented, but the district court noted that, specifically noted in its order, that the Deputy DA, I believe Elaine Kuo, argued the evidence of Webb's statement at, through Detective Olmstead at the hearing. It was presented as hearsay on the issue of whether she was present or not. So the, I would note that none of the cases say, the district court made much of the fact that Ms. Webb, when to her in Detective Olmstead's report, she may not have directly disavowed it, but she was never asked. She was asked, what did you tell Detective Olmstead? And she told, and at her depositions, he said, I told him that Ms. Bynes was already gone. My client's lawyer at the time and government counsel, neither side followed up and said, well, have you ever seen the report? Did you know the detective says that you said something different? That didn't happen, but that doesn't have to happen. And, and it has happened in Devereaux and in Spencer and other cases in the Ninth Circuit, but this was, this was, this is before trial. The Spencer case happened after a trial and all these facts were fleshed out in much greater degree. This was just a motion for summary judgment. In my view, the district court imposed an elevated requirement on, on appellant, not required. The key here is that, and really the rest of the factors the district court went through are really relevant only on, the other evidence is only relevant on, if we were trying to prove this circumstantially. There was direct evidence here of mischaracterization and in fact, Detective Olmstead admitted in his deposition that his report contradicted the recording. Detective Olmstead admitted that. He recognized that what he wrote. But just, just the fact that there was a difference means that it was done deliberately? I think you can. That's the burden she has to meet. Deliberate. She has to show us deliberate and she had a witness that said, she said one thing, when she's deposed, Witness Webb said she said X. The officer wrote Y. So, does that prove it beyond a reasonable doubt? I don't know that it does, but certainly for purposes of getting past summary judgment, the district court recognized that there was a tribal issue of fact about whether there was a fabrication. And the only reason that, I find it wasn't. So, in your view, the fact that the recording device was off when Ms. Webb said this. I'm sorry, I missed. So, as I understand it, your whole theory about deliberate, about the officer acting deliberately and not in his characterization of what happened, was that he knew that Webb had said she had left and didn't include it in his report? That's part of it, yes. What's the other part? It would be one thing if he had reported, the witness said a variety of things and the report was, but at the end, she said something different and my colleague had left so there was not being recorded. But that's not what happened here. There was a report, it says Webb said my client was present. Listening to the recording, she said quite the opposite. I think that's enough for a presumption of deliberate fabrication here, at least at a motion stage. The key point being that the only explanation came from the detective himself, the only explanation about why it wasn't deliberate. Because he's added the explanation to the deposition that his colleague had left and he was the one recording and Detective Olmstead wasn't recording. There is something, I think the court can say, in my view at least, this was not some rookie, this was a detective. He knows when a witness is being recorded. He knows when the device is or is not present. I don't think you've really answered the question the court has put you. If there is other evidence from which your client can be put outside the center at the time the call is made and that evidence is sufficient at preliminary hearing to find probable cause, then whatever error there is in motion of summary judgment as to Officer Olmstead's ignoring the first statement is not causative of the damage. There was other evidence, but there was also other evidence, Your Honor, that my client didn't do it and that was her own statement and her own testimony. That's complicated here and I have to say, to make it even slightly more pointed, I'm confused by your case here because some of this other evidence that was presented that puts her in the place that would have made it possible for her to make these calls is her own statement. She said she went out and she took the photo with her co-workers and then she went back in the building. So when that is her statement, who cares that there is this discrepancy with the detective talking about the witness web statement? But her statement has to be taken in context, Your Honor, and she was interviewed at length. It's a very lengthy recording and she denies over and over and over, consistently doing it, she denies making the calls. And when you look at, yes, it's a long statement and parts of it are confusing, but the overall thrust of it, the overall statement is not confusing. She adamantly denies doing anything wrong or making these calls. You want to save any time for rebuttal? You're down to a minute. Thank you. Yes. Morning. May it please the Court, Robert Gilbreth for the Appellee. This is a narrow appeal. The District Court correctly found that there was no evidence, either direct or circumstantial, that Detective Olmstead knowingly falsified anything in his report and that independent evidence established probable cause for Ms. Bynes' prosecution. And the case was resolved on summary judgment, not because the District Court weighed credibility, but because the record contains no proof of intent, which is a critical element under Devereaux and Spencer. So the plaintiff's entire claim, or the appellant's entire claim, rests on one line in Detective Olmstead's report, his notation that Ms. Webb said that Ms. Bynes went back inside the building after taking the photographs and before leaving for lunch. And the plaintiff calls that line a fabrication, but here's the problem. The audio recording of Ms. Webb's interview simply stops or was interrupted before that part of his conversation with her. Detective Olmstead testified that Ms. Webb clarified her timeline after the recorder was off or Detective Hendricks was out of the room talking to someone else. And Ms. Webb was never asked in her deposition whether she ever made that statement, so there's no contradiction in the record. And so there's just... Didn't Olmstead first say that Webb put Bynes inside the center or, pardon me, outside the center at the time the call was made? Yes. In the recorded part of her witness interview... Here's about the recording part. That's a statement that Olmstead heard Webb make, but he didn't include that in his report. That's correct, but... So therefore, why isn't that a contradiction that shows, arguably, that Olmstead was after Bynes? Well, what's key there, Your Honor, is that the recording was turned over to the District Attorney, and so transparency is not fabrication. The District Attorney was given the recording and shown that Ms. Webb's statement in the recorded portion contradicted what Detective Olmstead said, but then Detective Olmstead explained, yes, that portion of my interview with her was not recorded. So you're correct. So it's contradictory evidence by Mr. Olmstead? Yes, and I think that's correct, and that is why Judge Calabretta said, okay, I don't really think there's a fact question here, but I will go ahead and find that there's a fact question on inconsistency, or contradiction, or inaccuracy. So that is what took us to the next step in the analysis. Should it just be doing that on a motion of summary judgment? It's a tribal issue of fact, isn't it? Well, no, because the mere existence of an inconsistency or an inaccuracy is not enough to satisfy or justify an inference of deliberate falsity. Why not? I mean, if he buries a statement which proves her innocence, why isn't that sufficient evidence that he's after her deliberately? Well, if he had buried it, then that might be a different story, but again, here, the recording, this was all turned over to the District Attorney. Nothing was concealed. So the District Attorney and the Court were aware that Ms. Webb had said something different in the recorded portion of her testimony. So everybody, this was not concealed. I think if you had concealment, then that might be a different question. And of course, Ms. Bynes did admit in her own deposition that she did go back inside the building after taking that photo, and I think it's noteworthy that in her deposition, she said it this way. She said, I gathered my things, I put them in the lobby, I went outside and took the photograph, and then I went back inside the lobby to get my things, and I realized, oh, my backpack is still in my office. So she said I had to go back to my office, where the phone calls were made, to get my backpack. So it's not just a matter of her running back in to grab her things out of the lobby. She actually said in her deposition, I went back to my office. My understanding from the record is that she made that statement about where she was in her post-incident interview before the charging decision was made, so that that would have been part of the calculus in terms of, do we have a basis for charges? Am I correct about that? That's correct. That's correct. And so, as the court knows, under Devereux and Spencer, the plaintiff must show two things, a deliberate fabrication, meaning the officer knew or should have known that the information was false, or that the officer acted in bad faith, and that the fabrication actually caused the plaintiff's deprivation of liberty. Not every inaccuracy rises to a constitutional tort. Devereux explicitly says that omissions, mistakes, or even carelessness isn't enough. There has to be knowing falsity. And both direct... Yes, Your Honor. Let me just pose a concern that I have. The district court essentially found that there were disputed facts of indispute.  He went on to say, well, taking a look at all this evidence, no reasonable trier of fact could ever find for plaintiff. Now, you can do that on summary judgment, but you have to be awfully careful, because if you find a tribal issue of fact, usually, as Judge Beah said, you should go to the jury. And if you say, well, in my judgment, no reasonable trier of fact could come out the other way, it could come out in favor of the plaintiff. Embedded in that is an idea that there's a credibility, you know, that the court is actually looking at the facts and saying, well, nobody's going to believe her under all these circumstances. So, you know, let's just end this case now. Boom. Summary judgment for the defendant. And I think... That gives me a bit of a pause here. I mean, you know, I understand that there's a lot going on here, and that, you know, she made comments that she was going back inside, just as you said, and whatnot. Doesn't help her case, but... I understand the concern, Your Honor, and I think maybe the key here is when you said that Judge Calabretta perhaps thought nobody's going to believe her. Well, her being Ms. Bynes. And when you have a situation like we have here with facts where Ms. Bynes not only admits that she went back inside the building at the pertinent time, but the redial on her phone showed that it was her, that she had the quiz that day, and additional facts that finding that what the dispute over what Ms. Webb said could not have been the cause of her deprivation of liberty, then I think that concern is lessened, Your Honor. But I do understand that concern. I mean, you know, I will plead guilty to my own... When I was a district judge, I mean, there were a few occasions in which I said, you know, no jury is ever going to rule for the plaintiff, and, you know, let's just end this case now. And I took my chances. And I realize, I mean, I understand the temptation to do that, so... And I think... But just give me pause here. I do understand that. And perhaps you might... You have to factor in a lot of policy analysis here. Like if we send every one of these cases to a jury, what effect is it going to have on law enforcement? So that's a different factor.  But based on this evidence that Judge Calabretta's careful opinion, I think at best we have at most an imperfect investigation and maybe a missing few seconds or an unrecorded portion of audio, not a constitutional violation. The record shows no deliberate falsification, no concealment, and independent probable cause. And for those reasons, the district court's judgment should be affirmed. And if there are no further questions, I'll yield the balance of my time. Thank you, counsel. Rebuttal? Just to follow up on your Honor's last question. It wasn't a question. It was an observation. It was an observation. You're right. The district court has to be very careful making credibility determinations. And in this case, to grant ceremony judgment, the district court was not just making a credibility determination about my client. He was also making one about my client. Ms. Webb, who was a disinterested third party. Let me ask you something. The report of Olmstead, ER 142, states that Webb stated she believed plaintiff was still in her office when she left for lunch. When she left for lunch, right? But she said just the opposite earlier. Were both of those statements given to the DA? You're talking about the detective's report? Yes. The detective's report was given to the DA. So the DA knew at the preliminary hearing that there was an inconsistency in Olmstead's report. First, Webb said Bynes was out of her office. Then she said no, Bynes was in her office. I think, if I'm not mistaken, Your Honor, I don't have the police report in front of me, but I think the court is confusing. Webb said that she, Webb, left the office, not that Bynes left the office. And that, because the report, the gist of the report was the report, the officer said he reported that my client, that Webb said my client was still in the office. Not that she made, he didn't report that she made contradictory statements. The contradiction wasn't evident unless you listen to the recording. The report itself, I believe, I don't have in front of me, but I have reviewed it, the report says that Webb said Ms. Bynes was still in the office at the relevant time. Well, then how is the report contradictory with the recording? Because the recordings, in the recording, she tells the officer that Ms. Bynes had left the office before the relevant time. But both the recording and the report were presented to the DA. Yes. All right, any further questions? Thank you, Counsel, for your argument in this matter. Bynes v. County of Solano is submitted.
judges: PAEZ, BEA, FORREST